UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION AT COVINGTON

| | |
|---|---|
| TODD BONDS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 2:15-CV-209-WOB |
| v. ) | |
| ) | |
| SOUTHERN HEALTH PARTNERS, ) | **MEMORANDUM OPINION** |
| INC., *et al.*, ) | **AND ORDER** |
| ) | |
| Defendants. ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Todd Bonds Todd Bonds is an inmate currently confined by the Kentucky Department of Corrections ("KDOC") at the Luther Luckett Correctional Complex located in LaGrange, Kentucky.[1] Proceeding without an attorney, Bonds filed a 42 U.S.C. § 1983 civil rights complaint [R.1] in which he asserts claims against the CCDC and Southern Health Partners, Inc., ("SHP") a corporate entity which provides healthcare services to inmates confined in county and city correctional facilities. *See* http://southernhealthpartners.com/ (last visited on April 1, 2016).[2] Bonds subsequently

---

[1] When Bonds filed this action on December 15, 2015, he was confined in the Campbell County Detention Center ("CCDC"), located in Newport, Kentucky. *See* R. 1; R. 1-2. Bonds has since filed three separate Notices informing the Court of a change of address [R. 12; R. 15; and R. 16]. In his two most recent Notices [R. 15; R. 16], Bonds stated that he was confined in the Roederer Correctional Complex, in LaGrange, Kentucky, but the KDOC's website states that Bonds is now confined in the Luther Luckett Correctional Complex. *See* http://corrections.ky.gov/depts/AI/LLCC/Pages/default.aspx (last visited on April 1, 2016).

[2] Bonds later filed a First Amended Complaint [R. 5], a Second Amended Complaint [R. 8] and a Third Amended Complaint [R. 11], in which he asserts additional federal claims against the CCDC and SHP.

1

filed a First Amended Complaint [R. 5], a Second Amended Complaint [R. 8], and a Third Amended Complaint [R. 11], in which he asserts additional federal claims against the CCDC and SHP.  Bonds's primary complaint is that while he was confined in the CCDC, he was denied proper medication for his diabetes condition in violation of his rights guaranteed by the Eighth Amendment of the U.S. Constitution, but Bonds also claims that defendants retaliated against him for questioning the medication administered to him.  By separate Order, Bonds has been granted *in forma pauperis* status.  [R. 18]

    The Court has conducted a preliminary review of Bonds's complaint and amended complaints because he asserts claims against government officials, and because he has been granted pauper status. 28 U.S.C. §§ 1915(a); 1915A.  In such cases, a district court must dismiss any action which: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2); 1915A(b)(1).  Because Bonds is proceeding *pro se*, the Court liberally construes his claims and accepts his factual allegations as true.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007).  But as explained below, Bonds has not alleged a claim upon which relief can be granted as to the federal claims which he has asserted, and those claims will be dismissed with prejudice.  Bonds's pendant state law claims will be dismissed without prejudice to his right to assert those claims in state court.

## BACKGROUND

In his original complaint [R. 1], Bonds alleges that "…his rights regarding prescription medication" were violated at the CCDC; that he has a fear of needles and is unable prick his finger to perform glucose-level tests; and that the defendants "refused to honor" his diabetic condition and prescribe him medication for the condition. [R. 1, p. 2, ¶¶ 3-6]  Bonds states that on November 20, 2015, he was placed on suicide watch because he asked questions about a drug being administered to him and because he refused to take a medication with which he was unfamiliar. [*Id*.]  Bonds also claims that he was subjected to humiliation, intimidation, retaliation, and abuse, from both medical and correctional staff. [*Id*., ¶ 3]

Bonds's allegations that he was denied necessary medical treatment and/or medication fall under the Eighth Amendment of the U.S. Constitution, which prohibits cruel and unusual punishment.  Bonds's claim alleging retaliation falls under the First Amendment of the U.S. Constitution Bonds seeks an order requiring jails to allow all inmates to inquire about their medical treatment/medications without fear of retaliation, and $7.5 million in compensatory damages from the defendants. [*Id*., p. 2, ¶ 4; ¶ 7]

In his First Amended Complaint [R. 5], Bonds reiterated the claims set forth in his original complaint, but provided more details about the claims.  Bonds stated that on November 18, 2015, he was arrested and taken to the CCDC; that at the time, he was being treated for high blood pressure and Type 2 diabetes; and that because he was afraid of needles, he refused to prick his finger to perform his own blood-sugar test. [R. 5, p. 2]

Bonds alleges that on November 20, 2015, a nurse whom he identified as either "Anette" or "Ursula" refused to conduct his blood-sugar test for him, and told Bonds that "…inmates are required to 'prick' themselves by the CCDC policy." [*Id*., pp. 2-3] Bonds alleges that this particular nurse asked three CCDC deputy jailers to put him in an isolation cell because he refused to obey her order to prick his own finger (for the blood-sugar test), but that the deputies refused to comply with her request because they concluded that he had been a "victim" of a "hoax" by SHP. [*Id*., p. 3] Bonds alleges that he was denied medical treatment until he started having vision problems and started seeing "spots," which he described as a side-effect from his diabetes condition. [*Id*.]

Bonds alleges that he submitted several written requests to receive treatment for his diabetic condition; that all of his requests were denied, *see id*.; that in late December 2015 and early January 2016, Nurses "Hope" and "Marissa" tried to get him to sign an unidentified statements that were "back-dated" to the date of his arrest of November 2015, but that he refused to do so. [*Id*., pp. 3-4] Bonds alleges that in December 2015, he submitted several written requests to the CCDC's "administration offices" under the Kentucky Open Records Act, Ky. Rev. Stat. Ann. § 61.870 *et seq*., ("KORA") in which he requested (1) information about "beginning salaries of correctional officers," and (2) copies of the CCDC's documents which mentioned him (Bonds) in any respect (medical requests, grievances, e-mails). [*Id*., p. 6] Bonds alleges but that CCDC officials ignored his open records requests, and have therefore violated his rights the KORA.

4

Bonds alleges that when he asked questions about a drug (with which he was unfamiliar) being administered to him, the CCDC retaliated against him by placing him in a suicide dress and/or placing him in isolation under a suicide watch on December 26, 2015. [*Id.*, pp. 8-10] Bonds alleges that a CCDC deputy told him that he should sue the CCDC because its actions against him were wrong. [*Id.*, p. 9] Bonds's § 1983 claim alleging the denial of proper medical treatment falls under the Eighth Amendment and his claim alleging retaliation falls under the First Amendment. [*Id.*, p. 10] Bonds also alleges that the defendants violated his rights guaranteed under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* ("ADA").

In his Second Amended Complaint [R. 8], Bonds broadly alleges SHP humiliated and retaliated against him with "malicious and willful intent." [*Id.*, p. 1] Bonds further alleges that on January 12, 2016, he was called to the mail-room of the CCDC to collect three pieces of incoming mail, one of which was the January 7, 2016, Deficiency Order from this Court; that all three pieces of his incoming mail had been opened outside of his presence, including the Deficiency Order; and that he complained to CCDC Deputy Hickey about the opening of his incoming legal mail. [*Id.*, p. 2] According to Bonds, Deputy Hickey inquired about the opening of the envelope from this Court, but explained to him that "…the lady in charge of mail is a relative of 'CCDC' employee Major Nagel, and the lady 'couldn't tell' that the letter was legal mail." [*Id.*] Bonds's claim that a CCDC mailroom employee opened his incoming legal mail falls under the First Amendment of the U.S. Constitution, which guarantees access to the courts.

In his Third Amended Complaint [R. 11], Bonds reiterates that the CCDC medical staff refused to "aid" him in taking his blood-sugar tests, and that on January 19, 2016, Nurse "Roberta" informed him that his Type 2 Diabetes medication had been switched from Metformin to another unidentified drug because of the results from his second blood test, and because Metformin was too hard on the kidneys. [*Id.*, pp. 2-3] Bonds claims that prior to arriving at the CCDC, he had experienced no kidney problems from taking Metformin. [*Id.*] Based on these alleged events, Bonds claims that the defendants were deliberately indifferent to his serious medical needs in violation of the Eighth Amendment. In addition to his earlier requests for relief, Bonds also seeks an order terminating the SHP "staffers" (whom he identifies as Nurses "Annette," "Ursula," "Marissa," "Krista," and "Leslie") and revoking their medical credentials. [*Id.*, p. 4]

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier. Otherwise a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Bonds did not seek leave of Court before filing either his Second or Third Amended Complaints, but even so, the decision whether to permit amendment is committed to the discretion of the trial court. *Lucas v. Schneider*

*Nat'l Carriers, Inc.*, 953 F.2d 644, slip copy at *5 (6th Cir.1992) (unpublished). The Court will exercise its discretion and screen all of Bonds's amended complaints.

## DISCUSSION
### 1. CLAIMS ASSERTED UNDER 42 U.S.C. § 1983

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws, **and** he must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48, (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). As discussed, Bonds alleges that the defendants retaliated against him and improperly opened his incoming legal mail in violation of his First Amendment rights, and that they denied him necessary medical treatment, in violation of his Eighth Amendment rights.

Bonds has named the CCDC as one of two defendants in this action. The § 1983 claims which Bonds asserts against the CCDC suffer from a fatal defect, however, because jails and detention centers are buildings in which prisoners are held; neither can be considered "persons" subject to suit under § 1983. *Monell v. Dep't of Social Serv.*, 436 U.S. 658, 688-90 (1978); *Marbry v. Corr. Med. Servs.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) ("[T]he Shelby County Jail is not an entity subject to suit under § 1983." (citing *Rhodes v. McDannel*, 945 F.2d 117, 120 (6th Cir. 1991)));

*Cage v. Kent Cnty. Corr. Facility*, No. 96-1167, 1997 WL 225647, at *1 (6th Cir. May 1, 1997) ("The district court also properly found that the jail facility named as a defendant was not an entity subject to suit under § 1983.").

To the extent that Bonds's submissions are broadly construed to include § 1983 claims against the governing body of Campbell County, presumably the Campbell County Fiscal Court, his First and Eighth Amendment claims fare no better. When a § 1983 claim is asserted (or construed as being asserted) against a municipality, a district court must analyze two distinct issues: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Bonds alleges that numerous nurses (whom he partially identified by name) employed by SHP either refused to provide him with specific diabetes treatment, and/or that they unnecessarily delayed in treating his high blood pressure and diabetes. Bonds further claims that specific CCDC officials retaliated against him and opened his incoming mail outside of his presence in violation of his First Amendment rights.

Bonds does not, however, allege that the Campbell County Fiscal Court had an policy or custom which was the moving force behind the alleged actions, or inactions, about which he complains. Absent such an allegation, a local government entity cannot be held liable under § 1983 based on the theory of *respondeat superior* for harm or injury inflicted solely by its employees. *Monell*, 436 U.S. at 611. Liability under § 1983 against a political subdivision may attach only where the "execution of a government's

policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" about which the plaintiff complains. *Id.* ; *see also Berry v. City of Detroit*, 25 F.3d 1342, 1345 (6th Cir. 1994)

Put another way, to prevail on a § 1983 claim against a municipality, the plaintiff must "identify the policy, connect the policy to the [local government] itself and show that the particular injury was incurred because of the execution of that policy." *Coogan v. City of Wixom*, 820 F.2d 170, 176 (6th Cir. 1987). The local government policy or custom must be the "moving force" behind the behind the violation of the plaintiff's constitutional rights. *Board of Cnty. Commrs. of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985) (explaining that there must be an "affirmative link between the policy and the particular constitutional violation alleged"); *Bennett v. City of Eastpointe*, 410 F.3d 810, 818-19 (6th Cir. 2005).

The only policy which Bonds has attributed to the CCDC is a policy pursuant to which inmates who have diabetes must "prick" themselves with a needle, *i.e.*, the diabetic inmates conduct their own blood glucose-level tests.  [R. 1, pp. 5-6]  Bonds challenges this policy on the grounds that he is afraid of needles, and because it is contrary to his personal practice of having someone else prick his finger to ascertain his blood glucose level.  Even accepting as true Bonds's allegation that the CCDC does in fact follow a policy which requires its diabetic inmates to prick their own finger (and hence conduct their own blood glucose-level tests), such a policy could hardly be considered as one that

9

promotes, condones, or effectuates harmful conduct or deliberate indifference in violation of the Eighth Amendment of the U.S. Constitution.

Here, Bonds simply alleges that the alleged policy deprived him of the ability to receive the specific type of medical care he deemed necessary to treat his condition at that specific time: to wit, having someone else, such as a nurse, prick his finger and conduct his glucose-level testing. Mere disagreement with the nature of one's medical treatment is not sufficient, standing alone, to constitute deliberate indifference to a serious medical need. *See Westlake v. Lucas*, 537 F.2d 857, 850 (6th Cir. 1976); *Alberson v. Norris*, 458 F.3d 762, 765–66 (8th Cir. 2006). Bonds fails to set forth facts indicating that the alleged harm that he suffered was caused by an unconstitutional policy statement, ordinance, regulation, by a decision officially adopted and promulgated by the entity's officers, or by a municipal custom.

Bonds's § 1983 claims against SHP suffer from the same defect as his claims against the CCDC. The municipal-liability law concepts discussed above apply to § 1983 claims against a private corporation like SHP.[3] *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) ("*Monell* involved a municipal corporation, but every circuit to consider the issue has extended the holding to private corporations as well."). "A private corporation is not liable under § 1983 for torts committed by its employees when such liability is predicated solely upon a theory of respondeat superior." *Austin v.*

---

[3] The Sixth Circuit has held that a private entity which contracts with the state to perform a traditional state function such as providing medical services to prison inmates may be sued under § 1983 as one acting under color of state law. *Hicks v. Frey*, 992 F.2d 1450, 1458 (6th Cir. 1993). Thus, to the extent that Bonds alleges that the SHP has contracted with the CCDC to provide medical services to its inmates, the Court presumes that SHP is a state actor.

*Paramount Parks, Inc.*, 195 F.3d 715, 728 (4th Cir. 1999). Rather, a private corporation which contracts with a municipal governing body is liable under § 1983 only when an official policy or custom of the corporation causes the alleged deprivation of federal rights. *Street*, 102 F.3d at 817. Liability must be based on a policy or custom of the contracted private entity or "the inadequacy of [an employee's] training." *Id.*; *Starcher v. Corr. Med. Sys., Inc.*, 7 F. App'x 459, 465 (6th Cir. 2001) ("CMS's [Correctional Medical Systems, Inc.,] liability must also be premised on some policy that caused a deprivation of [plaintiff's] Eighth Amendment rights.").

To the extent that Bonds is alleging that SHP had or followed a policy that requires inmates to prick their own finger and thus conduct their own glucose-level tests, and that he disagreed with that policy, he fails to state a claim upon which relief can be granted. A prisoner is entitled to medical care, but that concept does not mean, however, that a prisoner is constitutionally entitled to a specific type of medical care which comports with his personal preferences and practices. *Westlake*, 537 F.2d at 860.

Bonds alleges that specific nurses employed by SHP denied him medical treatment and/or unreasonably delayed in providing him with medical treatment, but Bonds does not allege that denial of and/or delay in receiving medical treatment by these specific SHP nurses resulted from a specific *corporate custom or policy* which SHP implemented. Again, as in the arena of governmental municipal liability, a private corporation which contracts with a governmental body to provide a service, such as medical treatment for inmates, is not vicariously liable under the doctrine of *respondeat superior* for the actions

11

of its employees. *See Patton v. Kentucky*, No. 1:12CV-P86-M, 2012 WL 3096618, at *2 (W.D. Ky. Jul. 30, 2012) (dismissing claims against SHP where prisoner plaintiff failed to allege that a policy or custom was the "moving force" behind the alleged Eighth Amendment violations); *Spradlin v. Osborne*, No. 4:10CV-P88-M, 2010 WL 3069072, at *1 (W.D. Ky. Aug. 3, 2010) (same) (citing *Austin*, 195 F.3d at 728); *Crouch v. Southern Health Partners, Inc.*, 2009 WL 860414, at *4 (W.D. Ky. Mar. 27, 2009) (dismissing § 1983 claims against SHP because the plaintiff asserted no claims of wrongdoing against SHP itself, and because liability against SHP under § 1983 could not be premised on the doctrine of *respondeat superior* or vicarious liability); *Morton v. Daviess County Detention Center*, No. 4:08CV-P30-M, 2009 WL 960495, at *5 (W.D. Ky. Apr. 7, 2009) ("Plaintiff's complaint is devoid of any allegations that an official policy or custom of Southern Health Partners, Inc. was the moving force behind any employee's alleged deprivation of Plaintiff's civil rights.")  Bonds's § 1983 claims against SHP will therefore be dismissed for failure to state a claim upon which relief can be granted.

## 2.  CLAIMS ASSERTED UNDER THE ADA

In his Second Amended Complaint, Bonds alleges that the defendants violated the ADA.  Bonds's allegation on this point is not a model of clarity, but he appears to be claiming that his diabetes, and/or his fear of needles and resulting inability to prick his finger to conduct a glucose-level test, qualified as disabilities under the ADA.

Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of

the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. *See generally*, *Mingus v. Butler*, 591 F.3d 474, 481–84 (6th Cir. 2010) (discussing Title II of the ADA in the context of prisoner litigation). However, Bonds's ADA claims lack merit and must be dismissed.

First, the ADA and Rehabilitation Act [29 U.S.C. § 794] afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but these statutes do not provide a general federal cause of action to challenge the sufficiency of the medical treatment of their underlying disabilities. *Carrion v. Wilkinson*, 309 F. Supp.2d 1007, 1016 (N.D. Ohio Mar. 10, 2004). *Carrion* was consistent with the conclusions reached by several other circuit courts of appeals which had addressed the issue. *See Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) (concluding that the ADA would not be violated by a prison's failure to address the medical needs of its disabled prisoners and that the statute "does not create a remedy for medical malpractice"); *Burger v. Bloomberg*, 418 F.3d 882, 883 (8th Cir. 2005) (holding that an RA and/or an ADA claim cannot be based on medical treatment decisions); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) (inmate's claims under RA and ADA were properly dismissed for failure to state claim as they were based on medical treatment decisions.).[4]

---

[4] *See also Thomas v. Pa. Dep't of Corr.*, 615 F.Supp.2d 411, 429 (W.D. Pa. 2009) (plaintiff's requests for a handicap cell that were denied based on a medical determination that they were not warranted did not support discriminatory treatment in violation of Title II of the ADA); *Redding v. Hanlon*, No. 06-4575 (DWF/RLE), 2008 WL 762078, at *16 (D. Minn. Mar. 19, 2008) (dismissing inmate's ADA claim where the plaintiff alleged that the defendants had denied him the single cell accommodation ordered by his doctor, not that he had been denied access to any service or program).

In *Carrion*, the prisoner-plaintiff alleged that he had been denied medical treatment in the form a proper diet which conformed to his diabetic needs, and that the denial of the diet violated the ADA. The district court rejected Carrion's ADA claim, stating that it was "…not the type[ ] of claim[ ] that the ADA and the Rehabilitation Act were intended to cover." *Id*. at *7 (citing *Galvin v. Cook*, No. CV 00-29-ST, 2000 WL 1520231, at *6 (D. Or. Oct. 3, 2000), in which the district court rejected a diabetic inmate's ADA claim). Numerous district courts have followed *Carrion*'s holding that the ADA does not provide a plaintiff with general federal cause of action for challenging the medical treatment associated with his or her underlying disability. *Kensu v. Rapelje*, No. 12-11877, 2015 WL 5302816, at *4 (E.D. Mich. Sept. 10, 2015) ("Defendant's conduct in response to Kensu's requests for dietary accommodation was medical treatment. The ADA does not provide relief for alleged incompetent treatment."); *Johnson v. Swibas*, No. 14-CV-2258-BNB, 2014 WL 5510930, at *3 (D. Colo. Oct. 31, 2014) ("Johnson's allegation that he was denied a single cell accommodation for his paruresis…challenges a medical determination, which does not implicate the ADA."); *VanDaalen v. Travis*, No. CV 12-642-PHX-RCB (ECV), 2012 WL 3257583, at *5 (D. Ariz. Aug. 8, 2012) ("Plaintiff appears to be raising claims under the ADA and RA regarding his medical care…. He cannot do so.") *Hardy v. Diaz*, No. 9:08-CV-1352 (GLS/ATB), 2010 WL 1633379, at *9 (N.D.N.Y. Mar. 30, 2010) ("Plaintiff in this case is only challenging the medical treatment of his underlying medical condition. Therefore, he cannot proceed under either the ADA or the RA."). Thus, Bonds's ADA claim challenging the medical

14

treatment which he received at the CCDC fails to state a claim upon which relief can be granted and must be dismissed.

Second, even assuming that the ADA provided Bonds with substantive a cause of action, Bonds does not meet the standing criteria of the ADA statutes. Under Title II of the ADA (42 U.S.C. § 12132), a plaintiff must establish that: (1) he or she has a disability; (2) he or she is otherwise qualified; and (3) he or she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his or her disability. *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005). Thus, Bonds must first demonstrate that he has a disability, which the ADA defines as:

> (A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
>
> (B) a record of such an impairment; or
>
> (C) being regarded as having such an impairment.

42 U.S.C. § 12102(2).

According to the ADA regulations, an individual is "substantially limited" in performing a major life activity if he is either: (1) unable to perform a major life activity that the average person in the general population can perform (*e.g.*, walking), or (2) significantly restricted as to the condition, manner, or duration under which she can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major

life activity (*e.g.*, being able to walk only for brief periods of time). 29 C.F.R. § 1630.2(j)(1)(i)-(ii). Major life activities include caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working. 29 C.F.R. § 1630.2(i)(1)(i).[5] Major life activities also include the operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. 29 C.F.R. § 1630.2(i)(1)(ii).

Broadly construing Bonds's submissions, Bonds appears to be alleging either that his diabetes and/or his aversion to needles counts as disabilities under the ADA. Diabetes qualifies as a physical impairment, but it does not, per se, qualify as a disability under the ADA. *See Salim v. MGM Grand Detriot, L.L.C.*, 106 F. App'x 454, 459 (6th Cir. 2004) (citing *Nawrot v. CPC Int'l*, 277 F.3d 896, 903 (7th Cir. 2002)). One court has concluded that based on a very limited and specific set of facts, trypanophobia (also known as "needle-phobia") could qualify as a disability. *See Stevens v. Rite Aid Corporation*, No. 6:13-CV-783, 2015 WL 5602949, at *6 (N.D.N.Y Sept. 23, 2015).[6]

---

[5] Thinking also has been held to be a major life activity. *Taylor v. Phoenixville Sch. Dist.*, 184 F.3d 296, 307 (3d Cir. 1999).

[6] *Stevens* involved an employment discrimination claim brought under the ADA; the plaintiff was a pharmacist who worked for the Rite Aid pharmacy company until he was discharged in August 2011. *Id.*

But an ADA plaintiff must show more than a physical impairment; he or she must allege and demonstrate that the identified disability substantially limits one or more of his or her major life activities. 42 U.S.C. § 12012(2); *Salim*, 106 F. App'x at 459. Bonds does not, however, allege facts indicating either that his diabetic condition or his phobia of needles substantially limit one or more of his major life activities.

Even assuming that Bonds had met the first two elements of an ADA claim, by demonstrating that either of his conditions counted as disabilities **and** that he is "otherwise qualified" to participate in "services, programs, or activities" (in this case, receiving a diabetic treatment), Bonds has not satisfied the third requirement, which requires a plaintiff to allege that he is being excluded from receiving proper medical treatment (for either of his conditions) *because of* his alleged disabilities, or, put another way, that he was discriminated against *because of* his alleged disabilities.

Here, Bonds merely alleges that in numerous instances, he was denied proper medical treatment for his diabetes, a claim which falls squarely under the Eighth Amendment of the U.S. Constitution. As previously discussed, that allegation is insufficient under the ADA. *See Carrion*, 309 F. Supp.2d at 1016 (dismissing claims by prisoner with diabetes that he was denied medical treatment because they are not the type of claim that the ADA and the RA were intended to cover); *Stevenson v. Pramstaller*, No. 07-14040, 2008 WL 5085145, at *3 (E.D. Mich. Oct. 2, 2008) (Report and Recommendation to grant summary judgment on ADA claim because prisoner alleged

---

at *1. Rite Aid required its pharmacists to administer injections for immunizations, but Stevens alleged that he could not administer injections because he suffered from trypanophobia (needle phobia). *Id*.

incompetent medical treatment, not that he was being excluded from a prison service, program or activity, or of discrimination based on his disability); *Stevenson v. Pramstaller* No. 07-14040, 2009 WL 804748 (E.D. Mich. Mar. 24, 2009) (adopting Report and Recommendation and granting defendants' motion for summary judgment). Bonds's Eighth Amendment claims against both of the named defendants (the CCDC and SHP) fail to state a claim upon which relief can be granted.

For these additional reasons, Bonds's ADA allegations will be dismissed for failure to state a claim upon which relief can be granted.

### 3.  CLAIMS ASSERTED UNDER THE KORA

Bonds alleges that the defendants have violated state law by ignoring, or refusing to respond to, his open records request under KORA. The Court has dismissed Bonds's federal claims (under 42. U.S.C. § 1983 and the ADA), thus leaving Bonds's pendant state law claim alleging violations of the KORA as the sole surviving claim. A district court may decline to exercise supplemental jurisdiction over state-law claims once it has dismissed all claims over which it possessed original jurisdiction. *Gibbs v. Montgomery County Agricultural Society*, 140 F. Supp.2d 835, 845 (6th Cir. 2001); *Saglioccolo v. Eagle Ins. Co.*, 112 F.3d 226, 233 (6th Cir. 1997). Indeed, the Sixth Circuit has recognized that if all federal claims are dismissed before trial, remaining state-law claims generally should be dismissed as well. *Saglioccolo*, 112 F.3d at 233; *see also Taylor v. First of Am. Bank-Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992). Consistent with that principle, the Court declines to exercise supplemental jurisdiction over Bonds's state law

claims alleging violations of the KORA. *See* 28 U.S.C. § 1367(c)(2). Bonds is free to pursue his KORA claims in state court.

## CONCLUSION

Accordingly, **IT IS ORDERED** that:

(1)     Plaintiff Todd Bonds's 42 U.S.C. § 1983 claims against the Campbell County Detention Center and Southern Health Partners, Inc., alleging violation of his rights under the First and Eighth Amendments of the U.S. Constitution, are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

(2)     Bonds's claims against the Campbell County Detention Center and Southern Health Partners, Inc., alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12132, are **DISMISSED WITH PREJUDICE** for failure to state a claim upon which relief can be granted.

(3)     Bonds's claims against the Campbell County Detention Center and Southern Health Partners, Inc., alleging violations of the Kentucky Open Records Act, Ky. Rev. Stat. Ann. § 61.870 *et seq*, are **DISMISSED WITHOUT PREJUDICE** to Bonds's right to assert those claims in state court.

(4)     This proceeding is **DISMISSED** and Judgment will be **ENTERED** contemporaneously with this Memorandum Opinion and Order in favor of the named defendants.

(5)     The Clerk of the Court shall send a copy of (a) this Memorandum Opinion and Order, and (b) the Payment Order entered on March 31, 2016 [R. 18], to Bonds at his

address of record **and** to the following address:  Todd Bonds, KDOC # 280660, Luther Luckett Correctional Complex, Dawkins Road, Box 6, LaGrange, Kentucky, 40031.

This April 6, 2016.



Signed By:
*William O. Bertelsman*  WOB
United States District Judge

20